UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| REGINALD T. WALTON and | ) | CAUSE NO. 1:13-cr-0104-WTL-01 |
| DAVID JOHNSON, | ) | -03 |
| | ) | |
| Defendants, | ) | |

## GOVERNMENT'S TRIAL BRIEF

The United States of America, by counsel, Josh J. Minkler, United States Attorney for the Southern District of Indiana, and Bradley A. Blackington, Assistant United States Attorney, files the following Government's Trial Brief. The government submits this Trial Brief to aid the Court in resolving evidentiary issues that may arise during the trial.

**I.   EVIDENTIARY FOUNDATION FOR WIRE SURVEILLANCE EVIDENCE**

    **A.   ADMISSIBILITY OF RECORDINGS**

        **1.   General Foundational Requirements**

Preliminary questions concerning the admissibility of evidence must be established by a preponderance of the evidence. Fed. R. Evid. 104(a). A party offering a recording into evidence must prove that the tape is a true, accurate, and authentic recording of the conversation between the parties involved in the conversation. *United States v. Thomas*, 294 F.3d 899, 904 (7th Cir. 2002). The proponent of the evidence can meet this standard by establishing either a chain of custody showing that the tapes are in the same condition as when recorded or other

testimony to demonstrate the accuracy or trustworthiness of the evidence. *Id.*; *United States v. Rivera*, 153 F.3d 809, 812 (7th Cir. 1998).

The Seventh Circuit interpreted this standard in *Rivera*. In *Rivera*, the DEA conducted wire surveillance over cellular telephones used by a defendant. *Rivera*, 153 F.3d at 811-12. The DEA intercepted telephone conversations involved cocaine trafficking activity. *Id.*, at 812. A DEA agent who supervised the interception of the cellular telephone conversations testified that the interception of the conversations occurred at the DEA office. *Id.* As wiretap equipment simultaneously recorded the conversations onto cassette tapes, DEA agents monitoring the wiretap equipment maintained a log that reflected the date, time and content of the calls. *Id.* DEA agents maintained the cassette tapes in official custody at all times during the investigation. The Seventh Circuit found that the government's showing that the tapes remained in official custody at all times, coupled with the procedures used to initially record the telephone calls, satisfied the chain of custody requirement for the admissibility of the tape recordings. *Id.* The Seventh Circuit has also noted that when the chain of custody of recordings is questioned without any evidence of tampering, and the recordings remain in official custody at all times, a presumption arises that the government handled the tapes properly. *Thomas*, 294 F.3d at 905.

The only significant difference between *Rivera* and the case at bar is the storage medium for the intercepted audio conversations. *Rivera* involved cassette tapes. In the case at bar, the case agent will testify that DEA used computer equipment to record the telephone conversations simultaneously on a computer mainframe and a magnito-optical disc. Both the computer mainframe and the magnito-optical disc remained in official custody at all times. The agents in

the case at bar utilized the same basic procedures to intercept and record the telephone conversations as the agents in *Rivera*. Consequently, the audio recordings generated in the case at bar will meet the chain of custody requirement outlined in *Rivera*. *See also United States v. Alvarez*, 860 F.2d 801, 808 (7th Cir. 1989) (chain of custody requirement satisfied because of procedures used by DEA to intercept and record telephone conversations).

    **2.**    **Composite Tapes**

In the case at bar, the government will introduce a composite DVD containing certain selected telephone conversations, as opposed to a DVD containing all of the intercepted telephone calls. The Seventh Circuit has sanctioned the practice of introducing a composite tape limited to particular conversations that the government deems relevant to the trial. *United States v. DiMuro*, 540 F.2d 503, 512 (7th Cir. 1976); *Rivera*, 153 F.3d at 813. The government can establish the necessary foundation for the admission of composite tapes with testimony from an agent indicating that the composite recordings and the original recordings from which the agent created the composite recordings remained in official custody at all times. *Rivera*, 153 F.3d at 813.

Any prejudice arising from the government's decision to select certain tapes becomes cured by providing the defendants with access to the original tapes and permitting defense counsel cross-examination to establish the total number of intercepted conversations involving each defendant. *DiMuro*, 540 F.2d at 512.

The government will introduce a compact disc containing selected recordings of the defendants and other co-conspirators. As in *Rivera*, the government will establish the foundation for the admission of the composite recordings with testimony from the case agent

establishing that both the recordings from which he derived the composite compact disc and the composite compact disc itself remained in official custody at all times.

### 3. Inaudible Recordings

Frequently, certain portions of an intercepted telephone conversation remain inaudible. In this circumstance, the recordings still remain admissible despite the fact that portions of the conversation remain unintelligible, unless "the unintelligible portions are so substantial as to render the recording as a whole untrustworthy." *United States v. Vega*, 860 F.2d 779, 790 (7th Cir. 1988) (quoting *United States v. Wilson*, 578 F.2d 67, 69 (5th Cir. 1978)). The inaudibility of portions of the recordings only affects the weight that a jury should attach to the evidence, rather than the admissibility of the recordings themselves. *Vega*, 860 F.2d at 790-91.

### B. ADMISSIBILITY OF TRANSCRIPTS OF ENGLISH CONVERSATIONS

The Seventh Circuit has sanctioned the admission of transcripts of conversations held in English when the underlying recordings are played to the jury.[1] *United States v. Breland*, 356 F.3d 787, 794 (7th Cir. 2004) (citations omitted). The trial court, however, should instruct the jury that if any variation exists between the tapes and the transcripts, that they should rely upon the tapes. *Id.*, at 795. The Seventh Circuit also permits the inclusion of the names of the speakers on the transcripts, based upon the lay testimony of a witness familiar with their voices. *Id.*

Furthermore, the jury may use the admitted transcripts in their deliberations. *Id.*, at 794.

## III. VOICE IDENTIFICATION

Federal law permits the voice identification of individuals participating in recorded conversations "by opinion based upon hearing the voice at any time under circumstances

---

[1] The government will not offer any telephone conversations occurring in a foreign language.

connecting it with the alleged speaker." Fed. R. Evid. 901(b)(5); *Vega*, 860 F.2d at 788. Voice identification may occur based upon minimal familiarity, *United States v. Recendiz*, 557 F.3d 511, 527 (7th Cir. 2009), and through lay witness testimony. *Vega*, 860 F.2d 779, 788. For instance, the Seventh Circuit has held that a witness who heard the voices of defendants only once during a court proceeding satisfied the minimal familiarity requirement for voice identification. *United States v. Mansoori*, 304 F.3d 635, 665 (7th Cir. 2002). Any questions concerning the length of the lay witness' contact with the speaker or the time that elapses between this contact and the identification do not affect the admissibility of the evidence. *Vega*, 860 F.2d at 788. These questions relate solely to the weight that the jury accords the evidence. *Vega*, 860 F.2d at 788.; *United States v. Alvarez*, 860 F.2d 801, 809 (7th Cir. 1988). Moreover, the witness establishing the voice identification of the speakers may gain the requisite familiarity with the voices either before or after listening to the particular conversation that becomes the subject of the voice identification. *Alvarez*, 860 F.2d at 809 (quoting Fed. R. Evid. 901 Advisory Committee Notes).

In the case at bar, the vast majority of the voice identification testimony will occur through the testimony of an FBI task force officer who has reviewed all of the intercepted telephone conversations and compared the voices in the telephone conversations to a voice exemplar tape that FBI generated of all of the defendants at a time when the defendants could be simultaneously seen and heard. The Seventh Circuit has sustained the admissibility of voice identification testimony when an agent has listened to the intercepted telephone conversations and compared the voices on the recorded conversations with the voices on a voice exemplar tape. *Alvarez*, 860 F.2d at 809.

## IV. INTERPRETATION OF THE CONTENT OF TELEPHONE CONVERSATIONS AS LAY OPINION TESTIMONY

The government will seek to admit lay opinion testimony from FBI Special Agent Brian Monahan and FBI Task Force Officer Andrew Shank concerning their interpretation of intercepted telephone conversations in this case.

Rule 701 of the Federal Rules of Evidence states that lay opinion testimony becomes admissible when the opinions are "(a) rationally based upon a perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based upon scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. The Seventh Circuit has noted that lay opinion testimony typically involves a summary of either first-hand observations or knowledge of the facts of the case. *United States v. Conn*, 297 F.3d 548, 554 (7th Cir. 2002). Lay opinion testimony becomes admissible to help the finder of fact "understand the facts about which the witness is testifying and not to provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events." *Id.*, at 554 (quoting *United States v. Peoples*, 250 F.3d 630, 641 (8th Cir. 2001).

The Seventh Circuit initially suggested that the interpretation of telephone conversations by a law enforcement witness may constitute permissible lay opinion testimony in *United States v. Conn*, 297 F.3d 548, 555 n.3. The *Conn* Court cited a Fifth Circuit opinion for this proposition. *Id.*, at 555 n.3 (citing *United States v. Miranda*, 248 F.3d 434, 441 (5th Cir. 2001)). In the cited Fifth Circuit case, a DEA agent participated extensively in the investigation of a drug trafficking organization. *Miranda*, 248 F.3d at 441. The DEA agent's activity included

6

engaging in physical surveillance, debriefing cooperating witnesses, and monitoring and reviewing intercepted telephone conversations. *Id.* The agent testified at trial and offered lay witness opinion testimony about the interpretation of drug code language. *Id.* The Fifth Circuit upheld the agent's testimony, ruling that the agent could offer lay opinion testimony regarding the interpretation of drug code language, because his extensive participation in the investigation allowed him to form opinions concerning the meaning of drug code language. *Id.*

The Seventh Circuit discussed the use of lay opinion testimony by a federal agent to interpret drug code language in *United States v. Rollins*, 544 F.3d 820 (7th Cir. 2008). During the testimony, the prosecutor asked a federal agent about his opinion as to the meaning of several dozen recorded telephone conversations. *Id.*, at 830. On one occasion, the prosecutor asked the agent about the meaning of a conversation which two conspirators indicated that they were going to have a drink at eleven o'clock. *Id.*, at 830-31. The agent replied that, based upon physical surveillance conducted in the case, he believed that the conversation involved the conspirators agreeing to meet a truck driven by another conspirator. *Id.*, at 831. The Seventh Circuit found that the agent had a rational basis for his lay opinion testimony based upon his first-hand perception of the intercepted telephone calls, along with his personal, extensive experience with that particular investigation. *Id.*, at 831-32. The agent listened to every intercepted telephone conversation and became familiar with the voices that he heard. *Id.*, at 832. Law enforcement surveillance of the conspirators assisted in giving meaning to language used during the recorded conversations and confirmed the accuracy of the agent's interpretation of the conversations. *Id.* The Seventh Circuit also found that the agent's testimony about the meaning of the conversations was helpful to a clear understanding of the intercepted telephone

7

conversations. *Id.* The Seventh Circuit noted that the testimony "assisted the jury in determining several facts in issue, including whether the defendants knowingly and intentionally participated in the charged conspiracy and their roles and extent of their involvement in that conspiracy." *Id.*

Although *Rollins* and *Miranda* involved drug investigations, appellate courts have permitted case agents or detectives to interpret telephone conversations and text messages as lay opinion testimony in other types of cases. *See United States v. Albertelli*, 687 F.3d 439, 445-48 (1st Cir. 2012) (admitting lay opinion testimony of agent that interpreted conversations in gambling operation); *United States v. Jayyousi*, 657 F.3d 1085, 1102-03 (11th Cir. 2011) (admitting lay opinion testimony of agent that interpreted conversations in counterterrorism case).

Recently, the United States District Court for the Eastern District of Michigan permitted extensive lay opinion testimony by agents in the public corruption prosecution against former Detroit Mayor Kwame Kilpatrick and co-defendant Bobby Ferguson. *United States v. Kilpatrick*, 2013 WL 4029084 (E.D. Mich. 2013). In *Kilpatrick*, federal agents gathered approximately 300,000 text messages along with extensive records from the City of Detroit. *Id.*, at 23. The parties to the text messages often communicated "in an informal short-hand with little or no explanatory detail." *Id.* Consequently, many of the text messages contained cryptic references that could only become understood from the context of other text messages, records, and events that took place at the same time. *Id.* The district court permitted agents who participated in the investigation to interpret these text messages under the lay opinion rule. *Id.* The agents' participation in the investigation and review of text messages, wiretap

recordings, records, and other relevant information became the foundation for the lay opinion.[2]

*Id.* For instance, the following text message exchange occurred between Kwami Kilpatrick and Bobby Ferguson:

> BWF: You're welcome, boss, just left victor, the date has been change to my benifit, but we still have a problem on the big one, he things he is slickman, with this white folks.
>
> KMK: His slick shit is running out.  I got his ass on something. I aint happy.
>
> BWF: Damn, I not the noisy one, but I will find you today to here this and tell you minds.

*Id.*, at 27.  A federal agent offered lay opinion testimony interpreting the phrase "big one" as referring to a specific city contract and "victor" as Victor Mercado.  *Id.*  The district court found this lay opinion testimony admissible.  *Id.*

Like the opinions offered in *Kilpatrick* and the other cases cited above, the government will offer lay opinion testimony from both Agent Monahan and Task Force Officer Shank to interpret informal text messages and telephone conversations that lack explanatory detail. Like *Kilpatrick* and the other cases cited above, the lay opinions will arise from the agent or officer's first-hand perception of the intercepted telephone conversations and their extensive experience with this investigation, including their review of other intercepted telephone conversations and text messages as well as documents seized during the investigation.

---

[2] The lay opinion testimony did not rest upon the agents' training, education, and experience in public corruption cases generally.  *Kilpatrick*, 2013 WL 4029084, at 23.

Respectfully submitted,

JOSH J. MINKLER
United States Attorney

By: s/Bradley A. Blackington

Bradley A. Blackington
Assistant United States Attorney

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on **February 26, 2015**, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

        s/Bradley A. Blackington

        Bradley A. Blackington
        United States Attorney's Office
        10 W. Market St., Suite 2100
        Indianapolis, IN 46204
        Phone: (317) 226-6333
        Fax: (317) 226-6125
        E-mail: bradley.blackington@usdoj.gov